**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| MILITARY-VETERANS ADVOCACY, | ) | |
| INC., LAW OFFICE OF JOHN B. WELLS | ) | CASE NO.  24-446 |
| | ) | |
| v. | ) | COMPLAINT FOR |
| | ) | DECLARATORY AND |
| JEFF LANDRY, in his official capacity | ) | INJUNCTIVE RELIEF |
| as Governor of the State of Louisiana | ) | |
| and LIZ MURRILL, in her official capacity | ) | JUDGE: |
| as Attorney General of the State of Louisiana | ) | |
| | ) | MAGISTRATE: |

**COMPLAINT FOR DECLARAATOR AND INJUNCTIVE RELIEF**

Plaintiffs Military-Veterans Advocacy, Inc. (hereinafter MVA), a 501(c)(3) charitable

organization domiciled in Louisiana, and the Law Office of John B Wells, (hereinafter LOJBW),

a sole proprietorship, also domiciled in Louisiana, bring this Complaint against Defendants Jeff

Landry, in his official capacity as Governor of Louisiana and Liz Murrill in her capacity as

Attorney General of Louisiana for Declaratory and Injunctive Relief against Senate Bill 159 the

Preserving Lawful Utilization of Services for Veterans, *See* Acts 479  of June 3, 2024, RS 29:

296.  (hereinafter SB 159).

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action

arises under the Supremacy Clause, the Contracts Clause and the First and Fourteenth

Amendments to the Constitution, as well as the laws of the United States, specifically Title 38 of

the U.S. Code especially 38 U.S.C. § 5904 and Title 28 of the U. S. Code especially 28 U.S.C. §

2412.  Jurisdiction is also proper under the Court's Supplemental Jurisdiction pursuant to 28

U.S.C. § 1367.  The Court enjoys personal jurisdiction over the defendants.

2. Venue is proper in the Middle District of Louisiana because a substantial part of the events or omissions giving rise to the claims in this case has occurred in this district. Additionally both Defendants reside and maintain offices in this district. *See* 28 U.S.C. § 1391(b).

3. Plaintiffs have standing and ripe claims for relief because SB 159 purports to apply directly to Plaintiff LOJBW and it veterans law practice. MVA has associational standing because some of its members practice veterans law within the State of Louisiana.

4. The United States has waived sovereign immunity by adopting the Constitution of the United States, the Declaratory Judgment Act. 28 U.S.C. § 22-1-2202 and Fed. R. Civ. Pro. Rule 65.

<h3 style="text-align:center">PARTIES</h3>

5. This case is about some of the most vulnerable and ill patients in Louisiana, disabled veterans of the armed forces, the charitable organization and law office that seeks to help them; and an unconstitutional and ill-conceived law that will hamper or destroy Plaintiff's efforts in Louisiana leaving some veterans sicker and poorer than their brother and sister veterans in other States.

6. Plaintiff LOJBW consists of a single attorney, John B. Wells. Wells a retired Navy Surface Warfare Commander, graduated from a night law school program in 1994, shortly before retiring from the military. Admitted to practice law, first in Pennsylvania and later in Louisiana and the District of Columbia, LOJBW's practice emphasize military and veterans law. During its first two decade of operation, LOJBW provided courts-martial and administrative defenses, including the correction of records and discharge updates. Currently Wells is admitted in all military courts including the Court of Appeals for the Armed Forces and the Supreme Court of the United States.

7. In the last decade, LOJBW began to shift more towards veteran law. The practice began pro bono counselling as well as paid representation before the Board of Veterans Appeals the Court

of Appeals for Veterans Claims and Court of Appeals for the Federal Circuit.  In 2019, this came

to fruition when LOJBW won the case of *Procopio v. Wilkie*, 913 F.3d 1371 (Fed. Cir. 2019)

which extended benefits to approximately 90,000 veterans who had previously been denied

herbicide coverage by the Department of Veterans Affairs.  LOJBW is admitted to practice

before the VA and continues to represent veterans in all stages of the veterans system.

8.  Military-Veterans Advocacy is a tax exempt  non-profit established in 2012.  MVA's

volunteer Board of Directors works to litigate, legislate and educate veterans in their quest for

earned benefits.  MVA attorneys wrote the herbicide provisions of the PACT Act, Pub. L. 117-

168 and routinely discuss VA issues and provide recommendations to Congress. MVA also files

direct actions against the Secretary under 38 U.S.C. § 502 and is a regular amicus curiae

contributor at the Federal Circuit and the Supreme Court of the United States.  In its education

role, MVA provides social media outreach to veterans and conducts continuing legal education

on veterans laws to attorneys and promotes attorney participation in veterans law.

9.  LOJBW and MVA have long had a special interest in obtaining benefits for veterans.

LOJBW represents individual veterans,  MVA takes a more macro approach pushing for

legislation and litigation to address problems affecting many veterans.  This was the case in the

*Procopio v, Wilkie* case where the veteran was represented by LOJBW while MVA brought

pressure on Congress.  LOJBW and its attorney is the single largest financial supporter of MVA.

### INTRODUCTION

10.  Louisiana's attempt to restrict a veteran's access to attorneys is an unconstitutional

infringement on the rights of veterans to seek benefits by attempting to regulate an area already

preempted by Congress.  Veterans benefits are an outgrowth of the Congressional power to raise

the Army and a Navy.  U. S  Constitution Article 1 Section 8, Clauses 12 and 13.  This is a non-delegated power.

11.  Federal veterans benefits are a federal issue and Congress has preempted the field by establishing the compensation scheme for attorneys and claims agents in 38 U.S.C. § 5904.  The 20% presumption of reasonableness enacted by Congress  is consistent with Social Security and Federal Tort Claims Act fees.  Additionally, fee agreements are reviewed by the VA for reasonableness. Under the Supremacy clause, a State may not act to denigrate Congressional action.  Article VI clause 2.  Notably Pub. L. 118-21 (November 2023) addresses claims sharks, a problem ignored by SB 159.  The fact that this bill makes no distinction between federally accredited and non-accredited individuals should prove fatal in any court suit brought against the law.

12.  As well as conflicting with the statutory compensation scheme for attorneys enacted by Congress, the bill, as written, also conflicts with the Equal Access to Justice Act. (EAJA) 28 U.S.C. § 2412.  Under EAJA, a court may order the United States to pay attorney's fees to a party prevailing in a lawsuit.  This includes suits in the Court of Appeals for Veterans Claims and other superior courts.  Under the SB 159 cap, an attorney may be limited in the amount of the award he or she can accept.  So for example, if the Court awards attorney fees in the amount of $17,000. the attorney would have to return the amount over $12,500.

13.     SB 159 forces the attorney to include a disclaimer in his or her fee agreement that will require the veteran to be advised of the availability of no cost, albeit less competent, sources of assistance.  This is especially problematic in the cause of actions taken in the courts where veterans service organizations seldom practice.   Effectively this provision is forcing the attorney

to say things he or she does not want to say and to say things that may not be in the best interest of the veteran.

14.  SB 159 is Constitutionally void for vagueness.  It requires a report to the Department of Veterans Affairs.  It does not specify whether this report should go to the federal or state Department.  Additionally, the bill does not indicate whether the cap applies to a single stage of the proceeding or all stages.  For example, if the Court remands to the Board of Veterans Appeals, a frequent result, does the cap continue or does it restart?  Nor does the bill address its impact on contracts already executed where the claim/appeal is pending.

15.  SB 159 does not address fee agreements that have been executed but not fulfilled at the time of its enactment.  To the extent that it applies to contracts already in force, it is a violation of the Contracts clause of the Constitution, Article I Section 10 clause 1.  Most veteran's fee agreements are written to comply with federal law and are approved by the VA General Counsel. SB 159 would result in these federally approved contracts being forcefully and involuntarily modified to the derogation of the parties.

16.    Invoking the Supplemental Jurisdictions of this Court pursuant to 28 U.S.C. § 1367, SB 159 violates the separation of powers provisions of the Louisiana Constitution.  Louisiana, like the federal government, embraces three branches of government and the separation of powers doctrine.  Here, SB 159 violates this doctrine by encroaching on the authority of the Louisiana Supreme Court.  Article V Section 5 of the Louisiana Constitution vests plenary power to regulate attorneys in the Supreme Court.  In furtherance of this power, the Court has promulgated the Articles of Incorporation of the Louisiana State Bar Association which has incorporated the Rules of Professional Conduct. It is well settled that if a statute conflicts with this judicial power it will be invalidated.  *Midboe v. Comm'n on Ethics for Pub. Emps.*, 94-2270 (La. 11/30/94), 646

So. 2d 351, 358, abrogated on other grounds by Transit Mgmt. of Se. Louisiana, Inc. v. Comm'n

on Ethics for Pub. Emps., 96-1982 (La. 12/2/97), 703 So. 2d 576, reinstated by Transit Mgmt. of

Se. Louisiana, Inc. v. Comm'n on Ethics for Pub. Emps., 96-1982 (La. 4/24/98), 710 So. 2d 792,

793.

17.  The Court should invalidate SB 159 as unconstitutional and in conflict with the statutes and

laws of the United States as well as the Louisiana Constitution,

## FACTUAL ALLEGATONS

18.  Congress has changed the triggering event for when attorneys' fees may be charged on three

separate occasions, always shifting the starting point for attorney's fees earlier in the process.

19.  Originally, since 1864, attorneys' fees had been strictly limited to $10 due to the "relatively

uncomplicated procedure" of "applying for VA benefits" in "the initial claim stages," see S. Rep.

No. 100–418, at 63 (1988), which were "informal and non-adversarial," see H.R. Rep. No. 100–

963 (1988), at 15.

20.  In 1988, Congress abolished this limitation when they enacted the Veterans' Judicial Review

Act (VJRA), Pub. L. No. 100–687, 102 Stat. 4105 (1988) (codified at scattered sections of 38

U.S.C.), to allow, for the first time, judicial review of VA decisions. H.R. Rep. No. 100–963, at

21.  Concurrently, Congress also enacted § 5904(c)(1) (formerly 38 U.S.C. § 3404(c)(1)) to relax

the existing limitations on attorneys' fees, recognizing the importance of retaining legal counsel

in both judicial proceedings and administrative appeals. See S. Rep. No. 100–418, at 63–64; H.R.

Rep. No. 100–963, at 28.

22.  When first enacted, § 5904(c)(1)'s predecessor permitted attorneys' fees to be charged only

after "the [Board] first makes a final decision in the case." See § 3404(c)(1) (1988). This was

intended to "preserve the non-adversarial initial benefits process, while providing the veteran

with the assistance of an attorney when that process has failed and the veteran is faced with the complexities of appealing, reopening, and/or correcting prior adverse decisions." *See Carpenter v. Nicholson*, 452 F.3d 1379, 1383 (2006); *see also Stanley v. Principi*, 283 F.3d 1350, 1356 (2002) ("[S]ection 5904(c) was designed to allow veterans to retain paid counsel in connection with VA proceedings to reopen final Board decisions, but to bar the retention of paid counsel in connection with the original VA proceedings, which were viewed as presenting fewer complex issues."). The Senate Report distinguished reopening and reconsideration proceedings from the initial proceedings, explaining that "once the [Board] renders a decision adverse to the claimant on the merits, the need for the assistance of an attorney is then markedly greater with respect to such issues as seeking a *reopening and reconsideration* and deciding whether to proceed to court." *See* S. Rep. No. 100–418, at 63–64 (emphasis added).

23.  Subsequently, in 2006, Congress amended § 5904(c)(1) to shift the triggering event for allowing paid representation from a final Board decision to when "a [NOD] is filed with respect to the case." *See* § 5904(c)(1) (2006). The accompanying legislative remarks explained that the amendment would permit claimants to obtain paid representation "before [the] VA," and not just after a final Board decision. 152 Cong. Rec. S11854, at S11855 (2006) (Sen. Akaka); *see also* 152 Cong. Rec. H8995-02, at H9018 (2006) (Rep. Miller) ("Current law prohibits an attorney from receiving a fee for representing a claimant until the [Board] renders its first decision on the claim. Unfortunately, the claims process has become very complex and can be very overwhelming to some claimants. This provision will give veterans the option of hiring an attorney earlier in the process if the veterans believe they need assistance with their claim."). Because fees could be charged "only after a [NOD] has been filed in a case," the amended statute continued to bar attorneys' fees for the initial application of benefits while, at the same time,

7

expanding a claimant's ability to retain counsel to seek review of an unsatisfactory initial

decision by the AOJ. *See* 152 Cong. Rec. S11854, at S11855.

24. Now, under the AMA, the triggering event for attorneys' fees has once again shifted earlier

to permit paid representation after a claimant receives notice of the AOJ's "initial decision ...

with respect to the case." *See* § 5904(c)(1) (2019); *see also* H.R. Rep. No. 115–135, at 3

(explaining this amendment permits "veterans to retain the services of attorneys and accredited

agents who charge a fee when the [AOJ] provides notice of the *original decision*" (emphasis

added)). As the VA acknowledged in its Final Rule, this amendment was necessary "to allow

paid representation with respect to the claimant's *expanded options for seeking review of an*

*initial decision on a claim*." Final Rule, 84 Fed. Reg. at 150 (emphasis added). In other words,

because claimants are no longer limited to filing a NOD to seek review of an unsatisfactory

initial AOJ decision (and can instead file a supplemental claim or request for higher-level

review), "Congress necessarily had to shift the entry point for paid representation to the AOJ

decision itself" in order "to permit paid representation *regardless of the form of review*." *Id.*

(emphasis added). This shift was part of a continuing congressional effort to enlarge the scope of

activities for which attorneys can receive compensation for assisting veterans.

25. 38 C.F.R. § 14.636(c)(1)(i),[11] titled "[c]ircumstances under which fees may be charged,"

permits attorneys to charge fees for work performed after an AOJ has issued "an initial decision

on the claim." *See* § 14.636(c)(1)(i).  Congress expressed that a fee of 20% of back benefits as

reasonable.  It also provided provisions for recognizing an attorney or claims agent to practice

before the VA, review of fee agreements and incorporation of standards of conduct based upon

the Model Rules for Professional Conduct. 38 U.S.C. § 5904.  *See, also*,  38 C.F.R. § 14.636.

These protections do not exist in SB 159.

26.  Nowhere in the United States Constitution, the United States Code, or the Code of Federal Regulations are States authorized to enact their own compensation scheme for veterans cases.

27.  SB 159 defines "Compensation" as  any money, thing of value, or economic benefit conferred on, or received by, any person in return for services rendered, or to be rendered, by a person.  It further defines as "Person" as any natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity.  By its terms it does not exempt attorneys or accredited claims agents.  It further defines "Veterans' benefits matter" as the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, status, or entitlement to which is determined to pertain to veterans, their dependents, their survivors, or any other individual eligible for such benefits under the laws and regulations administered by the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs. By its terms it does not exempt litigation or court action at the Court of Appeals for Veterans Claims, Court of Appeals for the Federal Circuit or the Supreme Court of the United States.

28.  SB 159 goes on to say in subsection  B.(1) that "no person shall receive compensation for . . .  any services rendered in connection with any claim for pension benefits."  By its term, it does not exclude an appeal of the denial of pension benefits.

29.  SB 159 further states in Subsection C.(1) "A person seeking to receive compensation for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter shall, before rendering any services, memorialize the specific terms under which the amount to be paid will be determined in a written agreement signed by both parties. Compensation must be purely contingent upon an increase in benefits awarded, and if successful, compensation shall not exceed five times the amount of the monthly increase in benefits awarded

based on the claim. Compensation shall not exceed twelve thousand five hundred dollars or an amount established by federal law, whichever is less. No initial or nonrefundable fee shall be charged by a person advising, assisting, or consulting an individual on a veterans benefit matter. No interest shall be charged on any  payment plans agreed to by the parties."

30.  The provisions of Subsection C.(1)  conflict with the statutory scheme enacted by Congress.

31.  SB 159 goes on to say in Subsection C.(2)  "A person seeking to receive compensation for advising, assisting, or consulting with any individual with any veterans' benefits matter shall not utilize a medical professional with whom it has an employment or business relationship for a secondary medical exam.

32.  This vague provision would seem to preclude an attorney or claims agent from utilizing any medical professions used previously, to challenge a VA exam.  So for example, if an attorney used an orthopedic surgeon on a previous case, such as a personal injury auto accident, he or she would be precluded from utilizing the services of that medical professional.  There is no such limitation in federal law and it places an unreasonable burden on the veteran and his advocate. To the extent that any kind of contractual relationship exists between the attorney and the medical professional, this constitutes an impermissible impairment of a contract in violation of the Contracts clause of the federal Constitution.

33.  SB 159 says in Subsection C.(3)  that if a veteran claimant dies prior to a claim being processed, any expected compensation shall be waived and no charge, fee, or debt shall be collected. Any payment plan for services rendered shall be terminated immediately.  This completely ignores and conflicts with the claim substitution provisions of 38 U.S.C. §§ 5121 and 5121A.

34.  SB 159 provides in Subsection D that "No person shall guarantee, either directly or by implication, a successful outcome or that any individual is certain to receive specific veterans' benefits or that any individual is certain to receive a specific level, percentage, or amount of veterans' benefits.

35. SB 159 provisions in Subsection D are reflective of current ethical regulations and have been preempted by both Congress and the Louisiana Supreme Court.

36.  SB 159 in Subsection  E.(1) requires any person who advises, assists, or consults for compensation with any individual concerning any veterans' benefits matter to clearly provide "at the outset of the business relationship the following disclosure both orally and in writing:  "This business is not sponsored by, or affiliated with, the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs, or any other federally chartered veterans' service organization. Other organizations including but not limited to the  Louisiana Department of Veterans Affairs, a local veterans' service  organization, and other federally chartered veterans' service organizations may be able to provide you with this service free of charge. Products or services offered by this business are not necessarily endorsed by any of these organizations. You may qualify for other veterans' benefits beyond the benefits for which you are receiving  services here."

37.  The provision in Subsection E. (1) implicated the First Amendment protections on commercial speech by forcing an attorney or claims agent to provide orally and in writing certain language which would discourage representation,  In the context of litigation within the veterans court system the language is patently false.  Few if any organizations referenced in the required disclaimer provide assistance within the litigation community and those who do such as the Veteran's Pro-Bono Consortium and the National Veterans Legal Service Program are selective

in their choice of cases.  Referring veterans to veterans service organizations, even at the Board of Veterans Appeals level, might be a disservice to the veteran and a violation of the attorney's duty to the client.  Forcing an attorney, a claims agent, or any business to speak language with which the attorney, claims agent or business disagrees, impermissibly burdens and restricts their speech.

38.  SB 159 Subsection G prescribes that a violation of the provisions of SB 159 shall constitute an unfair, false, misleading, or deceptive act or practice in the conduct of trade or commerce under the Unfair Trade Practices and Consumer Protection Law, 15 R.S. 51:1401 et seq.

39.  The provisions of Subsection G constitute an improper attorney regulation and discipline which is left to the Louisiana Supreme Court pursuant to the Louisiana Constitution Article V Section 5.  The punishment provisions are *ultra vires* in an area beyond the scope of the Legislative function.

40.  SB 159 Subsection H requires an entity assisting veterans with their initial disability claims, "as prescribed within this Section" to file a report with the "Department of Veterans Affairs." The provision is void for vagueness since it does not define initial disability claims.  The practitioner is unsure whether this includes matters growing outside of the original claim such as a Supplemental Claim or Higher Level Review or even an appeal of a denial to the Board of Veterans Appeals.  Additionally, SB 159 does not specify whether the report should be sent to the state or federal Department of Veterans Affairs.

**CLAIMS FOR RELIEF**
**COUNT I**
**Federal Preemption Under the Supremacy Clause of**
**the United States Constitution**

41.  Plaintiff realleges all preceding paragraphs as though set forth herein.

12

42.  The Supremacy Clause of the United States Constitution provides that "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2.

43.  SB 159 conflicts with federal law, and thus violates the Supremacy Clause, in numerous ways.

44.  First, federal law, as codified in 38 U.S.C. § 5904 as implemented in 38 C.F.R. § 14.636, by establishing a separate compensation scheme for attorneys and claims agents.  This scheme actually restricts attorneys and claims agents and impermissibly limits federal law.  The $12,500. cap often is less than the federal compensation scheme and is insufficient for the work that must be performed in many veterans cases, especially those requiring litigation.  The effect of this limitation will be to discourage attorneys from taking veterans cases to the derogation of the rights of veterans.

45.  Secondly, the compensation provisions of SB 159 conflict with the federal Equal Access to Justice Act, 28 U.S.C. § 2412.  In federal litigation including veteran's cases, the prevailing party is usually awarded costs and attorney's fees based on an hourly rate scheme approved by Congress and the courts.  This hourly rate must meet a reasonableness standard to the satisfaction of the presiding court.  Fee payment is limited to prevailing parties when the Court finds that the position of the United States was not substantially justified.  Under SB 159 an attorney would have to surrender any portion of a fee in excess of the $12,500. cap.  This is obviously against the intent of Congress when they fixed attorney compensation in federal civil cases.

46. Each of these provisions, together and separately, render impossible or unnecessarily burdensome to Plaintiffs' efforts to secure benefits for veterans.

47.  The fee cap of SB 159 would require Plaintiffs' to seek fewer veterans cases and take other uncapped cases to offset the fee limitation in veterans cases.

48.  Accordingly, Plaintiffs are entitled to, and hereby seek, a declaration that SB 159 is preempted by federal law, and an injunction against enforcement of the statute. Plaintiffs will suffer irreparable harm without this requested relief.

49.  For these reasons, SB 159 cannot take effect without running afoul of the Equal Access to Justice Act, the Veterans Judicial Reform Act and the Appeals Modernization Act.
Under settled precedent, the State may not enact a statute to preempt federal law.

50.   Plaintiffs will suffer irreparable harm without this requested relief.

51.  These provisions present an obstacle to the objective Congress sought to accomplish when enacting and amending the Equal Access to Justice Act, Veterans Judicial Reform Act and the Appeals Modernization Act..

52.  Accordingly, Plaintiffs are entitled to, and hereby seek, a declaration that SB 159 is preempted by federal law, and an injunction against enforcement of the statute. Plaintiffs will suffer irreparable harm without this requested relief.

### COUNT II
### Abridgement of the Rights of Association, Speech, and Petition in Violation of the First and Fourteenth Amendments to the United States Constitution

53.  Plaintiff realleges all preceding paragraphs as though set forth herein.

54. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, proscribes any law "abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the government for redress of grievances." U.S. Constitution, amend. I.

55. SB 159 abridges Plaintiffs' freedom of speech by coercing them to deliver the State's message, via mandated disclosure language, and prescribing heavy penalties for failure to do so.

56. Consistent with the overall purpose of the statute, these coerced messages are intended to discourage veterans from securing the services of an attorney. In effect, the statute attempts to convince veterans that using a less qualified and possibly unaccredited organization would be desirable, even if this reduced the chance of obtaining benefits.

57. The statute also directly restricts Plaintiff's ability to speak. The disclosure provision abridges Plaintiff's speech in at least two ways. To begin, it is vague and overbroad, which will deter Plaintiffs from modifying the language of the statutory disclosure, even if it is not in the best interests of the client. Moreover, the provision suppresses protected speech by prohibiting Plaintiffs from "advising" veterans of the pitfalls of the reliance on free assistance, especially at the Board of Veterans Appeals or judicial levels.

58. By imposing these and other burdens on Plaintiffs, the statute interferes with their ability to associate freely with other veterans.

59. The statute also directly restricts Plaintiff's ability to speak. The mandated language does not allow for an attorney to caution the veteran on the limitations of the groups mentioned in the disclosure. Further, an attorney is not authorized to discuss the need for litigation. It is reasonable to infer from the involuntary language that these groups can provide a free service on a par with a licensed and accredited attorney. The required language effectively prevents the attorney from analyzing the case and acting in the best interest of the veteran.

60. Additionally SB. 159 abridges Plaintiff's speech in at least two ways. It is vague and overbroad, which will deter Plaintiff from speaking to veterans at all beyond the required

statements. Moreover, the provision suppresses protected speech by prohibiting Plaintiff's from "advising" patients about the pitfalls of using the organizations delineated in the disclosure.

61.  No compelling, or even rational, government interest supports this full scale assault on Plaintiff's First Amendment rights.  Accordingly, each of these provisions, together and separately, abridges Plaintiff's First Amendment rights, and they are not severable from the remaining provisions of the Act. Plaintiffs are entitled to, and hereby seek, a declaration that SB 159 infringes their First Amendment rights to free speech and association and an injunction against enforcement of the statute is required. Plaintiffs will suffer irreparable harm without this requested relief.

## COUNT III

### UNCONSTITUTIONAL INFRINGEMENT OF THE CONTRACTS CLAUSE

62.  Plaintiff realleges all preceding paragraphs as though set forth herein.

63.  SB 159 does not differentiate between new and existing contracts.  The effective date of the bill is based on the date of the Governor's signature or expiration of the time for the Governor to sign.

64.  The plain language of SB 159  indicates that it will apply to fee agreements that have been executed with performance pending or not complete.

65. A fee agreement is a contract within the scope of SB 159 and federal law in that it represents an agreement between two or more parties.

66.  The federal Constitution says in pertinent part:  "No State shall  . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10, cl. 1.

67. SB 159, by its terms caps fees below what was envisioned by the contracting parties and as authorized by federal law.

68.  SB 159 will result in contract modifications or a novation that will fundamentally change the extent of the services offered and limit Plaintiff's ability to assist veterans.

69.  Plaintiffs are  entitled to, and hereby seek, a declaration that SB 159 infringes their rights under Article I § 10 cl. 1 of the federal Constitution to maintain contracts without impairment.  Plaintiffs will suffer irreparable harm without this requested relief.

## COUNT IV

## VIOLATION OF THE LOSUISIANA CONSTITUTION

70.  Plaintiff realleges all preceding paragraphs as though set forth herein.

71.  The  government of the State of Louisiana is divided into three separate branches, legislative, executive, and judicial.  La. Const. Ann. art. II, § 1.

72, The Louisiana Constitution provides that none of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.  La. Const. Ann. art. II, § 2,

73.   The Louisiana Supreme Court has exclusive plenary authority to regulate attorneys, the practice of law and fee agreements.  La. Const. Ann. Art V § 5.

74.    In furtherance of this power, the Court has promulgated the Articles of Incorporation of the Louisiana State Bar Association which has incorporated the Rules of Professional Conduct.

75.  The Legislature has no authority to regulate the practice of law including attorney fee agreements.  *Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Ass'n*, 378 So. 2d 423, 426 (La. 1979).

76.  In Louisiana, if a statute conflicts with this judicial power it will be invalidated.  *Midboe v. Comm'n on Ethics for Pub. Emps*., 94-2270 (La. 11/30/94), 646 So. 2d 351, 358.77.

77. SB 159 infringes on the role of the Louisiana Supreme Court by setting a fee cap and requiring a disclosure which in some cases will be inconsistent with the Rules for Professional Conduct.

78. SB 159 infringes upon the separation of powers doctrine enshrined in the federal and Louisiana Constitution.

## PRAYER FOR RELIEF

Plaintiffs request that this Court grant the following relief:

1. Declare SB 159 unconstitutional and void due to its violation of the supremacy clause and the contracts clause of the United States Constitution.

2. Declare SB 159 unconstitutional and void due to its infringement on the speech, association, and privacy rights protected by the United States Constitution;

3. Enjoin Governor Jeff Landry and Attorney General Liz Murrill from any and all enforcement of SB 159, as passed and codified;

4. Award Plaintiffs costs, disbursements, and reasonable attorney's fees associated with this litigation pursuant to applicable authority; and

5. Provide such other relief as the Court deems appropriate.

Respectfully Submitted

Law Office of John B. Wells                    Military-Veterans Advocacy, Inc.

/s/ John B. Wells                              /s/ Brian K. Lewis
John B. Wells                                  Brian K. Lewis
LA Bar No.23970                                *Pro hac vice* pending
769 Robert Blvd. Ste 201                       8362 Tamarack Village #119-220
Slidell, LA 70458                              Woodbury, MN 55125
P.O. Box 5235                                  651-829-1503
Slidell, LA 70469
985-290-6940