UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MILITARY-VETERANS ADVOCACY, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| **JEFF LANDRY** *in his official capacity as Governor of the State of Louisiana*, **ET AL.** | **NO. 24-00446-BAJ-RLB** |

## RULING AND ORDER

Before the Court is Defendant Jeff Landry's (the "Governor") **Motion to Dismiss for Lack of Jurisdiction (Doc. 15)** and Defendant Liz Murrill's (the "Attorney General") **Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) for Lack of Standing and Failure to State a Claim (Doc. 36).** The Motions are opposed. (Doc. 33; Doc. 43). The Attorney General filed a Reply Brief. (Doc. 47).

For the reasons stated herein, the Governor's Motion (Doc. 15) is **GRANTED** and the Attorney General's Motion (Doc. 36) is **DENIED.**

## I.    BACKGROUND

This case concerns the constitutionality of SB 159, now Louisiana Revised Statutes § 29:296 (the "Act"). (Doc. 1). Plaintiffs Military-Veterans Advocacy, Inc. ("MVA"), a 501(c)(3) charitable organization, and the Law Office of John B. Wells ("LOJBW"), a sole proprietorship, filed suit against Defendants Jeff Landry, in his official capacity as Governor of Louisiana, and Liz Murrill, in her official capacity as Attorney General of Louisiana, to challenge the

constitutionality of the Act. (*Id.*).

Plaintiffs allege that this case is about some of the "most vulnerable and ill patients in Louisiana, disabled veterans of the armed forces, the charitable organization and law office that seeks to help them; and an unconstitutional and ill-conceived law that will hamper or destroy Plaintiffs' efforts in Louisiana leaving some veterans sicker and poorer than their brother and sister veterans in other States." (*Id.* at ¶ 5). Plaintiffs allege the following facts, which the Court accepts as true for purposes of Defendants' Motions to Dismiss.

Plaintiff LOJBW is a law practice that consists of a single attorney, John B. Wells. (*Id.* at ¶ 6). Wells is a retired Navy Surface Warfare Commander who practices military and veteran law. (*Id.*). Wells is admitted to practice in all military courts including the United States Court of Appeals for the Armed Forces and the United States Supreme Court. (*Id.*). Wells is also admitted to practice before the United States Department of Veterans Affairs (the "VA"). (*Id.* at ¶ 7). LOJBW focuses its practice on veteran law and represents veterans in all stages of the veteran system, including pro bono counseling and paid representation before the Board of Veterans Appeals, the Court of Appeals for Veterans Claims, and the Court of Appeals for the Federal Circuit. (*Id.*). In 2019, LOJBW won the case of *Procopio v. Wilkie*, 913 F.3d 1371 (Fed. Cir. 2019), which extended benefits to approximately 90,000 veterans who had previously been denied herbicide coverage by the Department of Veterans Affairs. (*Id.*).

Plaintiff MVA works to litigate, legislate, and educate veterans in their quest

for earned benefits. (*Id.* at ¶ 8). MVA attorneys wrote the herbicide provisions of the PACT (Promise to Address Comprehensive Toxics) Act, Pub. L. 117-168, and routinely discuss VA issues and provide recommendations to Congress. (*Id.*). MVA also files direct actions against the Secretary under 38 U.S.C. § 502 and is a regular amicus curiae contributor at the Federal Circuit and the Supreme Court of the United States. (*Id.*). In its educational role, MVA provides social media outreach to veterans, conducts continuing legal education on veteran law to attorneys, and promotes attorney participation in veteran law. (*Id.*).

Plaintiffs filed the instant suit to challenge the Act, which Plaintiffs contend will hamper or destroy their efforts in Louisiana to aid disabled veterans of the armed forces. (*Id.* ¶ 5). The Act provides:

A. For the purposes of this Section, the following terms shall have the following meanings:

(1) "Compensation" means any money, thing of value, or economic benefit conferred on, or received by, any person in return for services rendered, or to be rendered, by a person.

(2) "Person" means any natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity.

(3) "Veterans' benefits matter" means the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, status, or entitlement to which is determined to pertain to veterans, their dependents, their survivors, or any other individual eligible for such benefits under the laws and regulations administered by the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs.

B. (1) No person shall receive compensation for referring any individual

to another person to advise or assist the individual with any veterans' benefits matter.

> (2) No person shall receive any compensation for any services rendered in connection with any claim filed within the one-year presumptive period of active-duty release.

> (3) No person shall receive any compensation for any services rendered in connection with any claim for pension benefits.

C. (1) A person seeking to receive compensation for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter shall, before rendering any services, memorialize the specific terms under which the amount to be paid will be determined in a written agreement signed by both parties. Compensation must be purely contingent upon an increase in benefits awarded, and if successful, compensation shall not exceed five times the amount of the monthly increase in benefits awarded based on the claim. Compensation shall not exceed twelve thousand five hundred dollars or an amount established by federal law, whichever is less. No initial or nonrefundable fee shall be charged by a person advising, assisting, or consulting an individual on a veterans' benefit matter. No interest shall be charged on any payment plans agreed to by the parties.

> (2) A person seeking to receive compensation for advising, assisting, or consulting with any individual with any veterans' benefits matter shall not utilize a medical professional with whom it has an employment or business relationship for a secondary medical exam.

> (3) In the event that a veteran claimant dies prior to a claim being processed, any expected compensation shall be waived, and no charge, fee, or debt shall be collected. Any payment plan for services rendered shall be terminated immediately.

D. No person shall guarantee, either directly or by implication, a successful outcome or that any individual is certain to receive specific veterans' benefits or that any individual is certain to receive a specific level, percentage, or amount of veterans' benefits.

E. (1) No person shall advise, assist, or consult for compensation with any individual concerning any veterans' benefits matter without clearly providing at the outset of the business relationship the following disclosure both orally and in writing:

4

"This business is not sponsored by, or affiliated with, the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs, or any other federally chartered veterans' service organization. Other organizations including but not limited to the Louisiana Department of Veterans Affairs, a local veterans' service organization, and other federally chartered veterans' service organizations may be able to provide you with this service free of charge. Products or services offered by this business are not necessarily endorsed by any of these organizations. You may qualify for other veterans' benefits beyond the benefits for which you are receiving services here."

(2) The written disclosure shall appear in at least twelve-point font and shall appear in a readily noticeable and identifiable place in the person's agreement with the individual seeking services. The disclosure shall direct the individual seeking services to the nearest Veterans Service Office, with the appropriate address and contact information for that office. The individual shall verbally acknowledge understanding of the oral disclosure and sign the document in which the written disclosure appears to represent understanding of these provisions. The person offering services shall retain a copy of the written disclosure while providing veterans' benefits services for compensation to the individual and for at least one year after the date on which the service relations terminate.

F. Businesses engaging in the preparation of an initial claim or appeal of a disability rating for a fee shall not do any of the following:

(1) Utilize international call center or data centers for processing veterans' personal information.

(2) Gain direct access to any personal medical, financial, or government benefits login, username, or password information.

G. A violation of the provisions of this Section shall constitute an unfair, false, misleading, or deceptive act or practice in the conduct of trade or commerce under the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq.

H. An entity assisting veterans with their initial disability claims as prescribed within this Section shall, within one hundred twenty days of the request, provide on an annualized basis of all of the following data

5

to the Department of Veterans Affairs:

    (1) Aggregate number of serviced in the state.

    (2) Number of claims approved, denied, and pending.

    (3) Average claim return time.

    (4) Number of clients who received a successful increase who have a previously assigned "agent of record".

    (5) Data provided shall exclude any items of personal financial, medical, or other data deemed confidential, business privileged, or HIPAA protected information.

La. Rev. Stat. § 29:296.

    Plaintiffs allege that the Act conflicts with federal law and thus violates the Supremacy Clause. (Doc. 1 at ¶¶ 42–43). Plaintiffs also allege that the Act infringes on the Contracts clause because it caps fees below what the contracting parties envision. (*Id.* at ¶¶ 62–68). Plaintiffs contend that the Act will result in contract modifications or novation that will fundamentally change the extent of the services Plaintiffs can offer, limiting Plaintiffs' ability to assist veterans. (*Id.*).

    Plaintiffs further allege that the Act violates the First Amendment in three ways. First, Plaintiffs allege that the Act abridges Plaintiffs' freedom of speech by "coercing [Plaintiffs] to deliver the State's message, via mandated disclosure language, and pr[o]scribing heavy penalties for failure to do so." (*Id.* at ¶ 55). Plaintiffs allege that these coerced messages are intended to discourage veterans from securing the services of an attorney. (*Id.* at ¶ 56). Plaintiffs allege that, in effect, the Act attempts to convince veterans that using a less qualified and possibly unaccredited organization would be desirable, even if this reduces the chance of

obtaining benefits. (*Id.*).

Second, Plaintiffs allege that the Act directly restricts Plaintiffs' ability to speak. (*Id.* at ¶ 57). Plaintiffs allege that the Act is vague and overbroad, which will prevent attorneys from acting in the best interests of their veteran-clients. (*Id.* at ¶¶ 57, 59). Moreover, Plaintiffs allege that the Act suppresses protected speech by prohibiting Plaintiffs from "advising" veterans of the pitfalls of relying on free assistance, especially at the Board of Veterans Appeals or judicial levels. (*Id.* at ¶ 57).

Third, Plaintiffs allege that the Act interferes with their ability to associate freely with other veterans. (*Id.* at ¶ 58). Plaintiffs allege:

> No compelling, or even rational, government interest supports this full scale assault on Plaintiff[s'] First Amendment rights. Accordingly, each of these provisions, together and separately, abridges Plaintiff[s'] First Amendment rights, and they are not severable from the remaining provisions of the Act. Plaintiffs are entitled to, and hereby seek, a declaration that [the Act] infringes their First Amendment rights to free speech and association and an injunction against enforcement of the statute is required. Plaintiffs will suffer irreparable harm without this requested relief.

(*Id.* at ¶ 61).

Finally, Plaintiffs allege that the Act violates the Louisiana Constitution because it infringes on the Louisiana Supreme Court's ability to regulate attorneys and set applicable fee caps. (*Id.* at ¶¶ 70–78).

## II.    PROCEDURAL HISTORY

Plaintiffs filed suit against the Governor and the Attorney General, asserting the following causes of action: (1) federal preemption under the Supremacy Clause of the United States Constitution (Count I); (2) abridgement of the Rights of Association, Speech, and Petition in Violation of the First and Fourteenth Amendments to the

United States Constitution (Count II); and (3) unconstitutional infringement of the Contracts Clause (Count III). (Doc. 1).

The same day that Plaintiffs filed suit, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"), asking the Court to enjoin enforcement of the Act while the Court considered its constitutionality. (Doc. 2). The Court set the matter for hearing. (Doc. 5).

In response, the Attorney General filed the Declaration of Michael Dupree, Director of the Public Protection Division of the Attorney General's Office. (Doc. 19-2). The Declaration attests that the enforcement mechanism of the Act lies under his responsibilities at the Attorney General's Office, because the primary enforcement mechanism of the Act is the Louisiana Unfair Trade Practices Act, which Dupree enforces. (*Id.* at ¶¶ 6–9). Dupree further attested:

> I hereby attest that I have no present intention to enforce Act 479 or the Louisiana Unfair Trade Practices Act against the Plaintiffs in the Complaint. Further, I do not plan to bring any enforcement actions to enforce the provisions of Act 479 until the above-referenced litigation regarding the validity of Act 479 is resolved. In the event that my office determines to bring such any action against Plaintiffs, I will so advise, in advance, counsel representing the Attorney General in the case identified herein so that they can inform the Court as may be necessary or appropriate.

(*Id.* at ¶ 11).

Based on the Attorney General's commitment not to enforce the Act during the pendency of this lawsuit, the parties filed a Joint Motion to Continue the TRO. (Doc. 19). The Court granted the Motion and continued the hearing on Plaintiffs' Motion for TRO without date. (Doc. 28).

8

Now, Defendants ask the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 15; Doc. 36).

## III.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Products Liab. Litig*, 668 F.3d 281, 286 (5th Cir. 2012). Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Id.* (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court should consider a Rule 12(b)(1) attack before addressing any challenge on the merits of the claims. *Id.*

A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). That standard seeks to determine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*,

9

550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *Baker v. Putnam*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on a Rule 12(b)(1) motion, however, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (holding that a court ruling on a Rule 12(b)(1) motion may evaluate "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

## IV.   DISCUSSION

Defendants seek to dismiss Plaintiffs' claims against them for lack of subject matter jurisdiction under Rule 12(b)(1). The Attorney General argues that Plaintiffs lack standing because: (1) the Act does not apply to Plaintiffs; (2) Plaintiffs do not have organizational or associational standing; (3) Plaintiffs fail to allege harm; and (4) even if Plaintiffs allege harm, their harm is not redressable by the Court. (Doc. 36; Doc. 36-1).

The Governor argues that Plaintiffs lack standing because: (1) their harm is not traceable to the Governor; and (2) Plaintiffs' harm is not redressable by the Court.

(Doc. 15-1 at 2). The Governor also argues that he is immune from suit under the Eleventh Amendment. (Doc. 15 at 2).

Should the Court find that Plaintiffs have standing, the Attorney General argues that Plaintiffs fail to state a claim under Rule 12(b)(6). (Doc. 36).

The Court will begin with Defendants' jurisdictional challenges, addressing each argument in turn, and then proceed to the merits of Plaintiffs' claims against the Attorney General.

### A. Jurisdictional Challenges Under Rule 12(b)(1).

Defendants argue that the Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs lack standing to sue them. (Doc. 15 at 2; Doc. 36 at 2). "Under Article III of the Constitution, federal courts are confined to adjudicating 'cases' and 'controversies.'" *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017) (quoting *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)). "A proper case or controversy exists only when at least one plaintiff 'establish[es] that [he or she] ha[s] standing to sue.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019)). A plaintiff "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy*, 603 U.S. at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'"

11

*Murthy*, 603 U.S. at 57 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

"The plaintiff 'bears the burden of establishing standing as of the time [he or she] brought th[e] lawsuit and maintaining it thereafter.'" *Murthy*, 603 U.S. at 58 (first alterations by this Court; second by *Murthy*) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). The plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy*, 603 U.S. at 58 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)).

Additionally, "standing is not dispensed in gross." *Murthy*, 603 U.S. at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)). "That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy*, 603 U.S. at 61 (quoting *TransUnion*, 594 U.S. at 431). Thus, "for every defendant, there must be at least one plaintiff with standing to seek [relief]." *Murthy*, 603 U.S. at 61; *see also Deep S. Today v. Murrill*, 779 F. Supp. 3d 782, 799–804 (M.D. La. 2025).

### i. The Attorney General.

The Attorney General argues that Plaintiffs lack standing because: (1) the Act does not apply to Plaintiffs; (2) Plaintiffs do not have organizational or associational standing; (3) Plaintiffs fail to allege harm; and (4) even if Plaintiffs allege harm, their harm is not redressable by the Court. (Doc. 36; Doc. 36-1).

### 1. The Act Applies to Plaintiffs.

First, the Attorney General contends that the Act does not apply to Plaintiffs, and thus, "it is hard to conceive how the hypothetical harms posed could ever materialize." (Doc. 36-1 at 17). The Attorney General emphasizes that the Act does not apply to accredited agents and attorneys, and thus, does not affect Plaintiffs. (*Id.*).

Plaintiffs respond that "[f]or the first time, the Attorney General has argued that the statute only applie[s] to unaccredited representatives[.]" (Doc. 43 at 1). Plaintiffs contend that the plain language of the statute indicates otherwise. (*Id.*). The Act applies broadly to "persons," which the Act defines as "any natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity." La. Rev. Stat. § 29:296(A)(2). The Act further dictates, in part, that:

> B. (1) *No person shall* receive compensation for referring any individual to another person to advise or assist the individual with any veterans' benefits matter.
>
> (2) *No person shall* receive any compensation for any services rendered in connection with any claim filed within the one-year presumptive period of active-duty release.
>
> (3) *No person shall* receive any compensation for any services rendered in connection with any claim for pension benefits.

13

La. Rev. Stat. § 29:296(B) (emphasis added). Plaintiffs argue that under the plain text of the statute, there are no exceptions to the word "person." (Doc. 43 at 12). Thus, Plaintiffs contend that the statute does not exempt attorneys or accredited representatives.[1] (*Id.*). Plaintiffs assert that in reality, the "Attorney General is trying to say that the Legislature does not mean what it says." (*Id.*).

The Attorney General responds that Plaintiffs' argument is "misdirection, as the language of the operative provisions clearly applies to persons that advise, assist or consult with claimants but who do not represent them —*i.e.*, prepare [] or prosecute claims on behalf of claimants." (Doc. 47 at 5).

The Attorney General's position is nonsensical. The United States Court of Appeals for the Fifth Circuit has emphasized: "Plain meaning is always the start." *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 551, 217 L. Ed. 2d 294 (2024). "When interpreting statutory language, words are given their ordinary, plain meanings, and language must be enforced unless ambiguous. *Id.* (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)).

Here, the issue of who is covered by the Act is unambiguous. The Act applies to "persons," which the Act defines broadly, with no carveout for attorneys or accredited representatives. La. Rev. Stat. § 29:296(A)(2) ("'Person' means any natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity."). By its plain meaning, the Act applies to Plaintiffs.

---

[1] Plaintiffs represent that they are willing to enter into a "consent judgment exempting attorneys and accredited chains agents from the Act." (Doc. 43 at 16–17).

The Attorney General's argument that the Act "applies to persons that advise, assist or consult with claimants but who do not represent them —*i.e.*, prepare [] or prosecute claims on behalf of claimants" falls flat. (Doc. 47 at 5). The crux of an attorney's job is to "advise" clients. By way of example, the Act restricts a "person['s]" ability to receive compensation for "any services rendered in connection with any claim for pension benefits." La. Rev. Stat. § 29:296(B)(2). The Act further imposes requirements on a "person" "seeking to receive compensation for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter." *Id.* § 29:296(C). The Act's plain language applies to Plaintiffs.

### 2. Plaintiffs Have Alleged Associational Standing.

Second, the Attorney General argues that Plaintiffs must show organizational and associational standing. (Doc. 36-1 at 11).

When a plaintiff is an organization, "the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).

Organizational and associational standing are alternative paths for the plaintiff organization to satisfy Article III standing. For example, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth*, 422 U.S. at 511. A plaintiff's specific claims

15

determine which one type of standing must be satisfied, as it depends on who suffered the injury alleged and what relief is sought. *Id.* at 515 ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind."); *see also Nairne v. Ardoin*, 715 F. Supp. 3d 808, 827–28 (M.D. La. 2024), *aff'd sub nom. Nairne v. Landry*, No. 24-30115, 2025 WL 2355524 (5th Cir. Aug. 14, 2025).

An organization has associational standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Because the organization's members should otherwise have standing to sue in their own right, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* at 342 (quoting *Warth*, 422 U.S. at 511). The relief sought, such as a declaration, injunction, or other form of prospective relief, also must

be for "the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515; *see also Nairne*, 715 F. Supp. 3d at 828.

An organization "can establish standing in its own name if it 'meets the same standing test that applies to individuals.'" *OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 610 (5th Cir. 2017) (quoting *Ass'n of Cmty. Org. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999)). An organizational plaintiff must demonstrate the same "injury-in-fact," traceability, and redressability required of individual plaintiffs. The Fifth Circuit has held that nonprofit organizations can suffer an Article III injury when a defendant's actions frustrate their missions and force them to "divert [ ] significant resources to counteract the defendant's conduct." *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). Organizational standing based on resource diversion arises when "the defendant's conduct significantly and 'perceptibly impair[s]' the organization's ability to [conduct] its 'activities—with the consequent drain on the organization's resources . . .' Such injury must be 'concrete and demonstrable.'" *Id.* (internal citations omitted). "Not every diversion of resources to counteract the defendant's conduct, however, establishes an injury in fact." *Id.*; *see also Nairne v. Ardoin*, 715 F. Supp. 3d at 829.

Plaintiffs contend that both the MVA and LOJBW are entities that practice in the field of veteran law, and which are subject to the Act. (Doc. 43 at 13). Plaintiffs point the Court to *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1121–31, 1147–48 (Fed. Cir. 2021), in which the U.S. Court of Appeals for the Federal Circuit concluded that MVA had associational standing to challenge the validity of

certain regulations affecting military veterans. In the Complaint, Plaintiffs allege the following:

Plaintiff LOJBW is a law practice that consists of a single attorney, John B. Wells. (Doc. 1 at ¶ 6). Wells practices in military and veteran law. (*Id.*). Wells is admitted to practice in all military courts including the United States Court of Appeals for the Armed Forces and the United States Supreme Court. (*Id.*). Wells is also admitted to practice before the VA. (*Id.* at ¶ 7). LOJBW focuses its practice on veteran law and represents veterans in all stages of the veteran system, including pro bono counseling and paid representation before the Board of Veterans Appeals, the Court of Appeals for Veterans Claims, and the Court of Appeals for the Federal Circuit. (*Id.*).

As noted, Plaintiff MVA assets that it works to litigate, legislate, and educate veterans in their quest for earned benefits. (*Id.* at ¶ 8). MVA attorneys wrote the herbicide provisions of the PACT Act, Pub. L. 117-168, and routinely discuss VA issues and provide recommendations to Congress. (*Id.*). MVA also files direct actions against the Secretary under 38 U.S.C. § 502 and is a regular amicus curiae contributor at the Federal Circuit and the Supreme Court of the United States. (*Id.*). In its educational role, MVA provides social media outreach to veterans, conducts continuing legal education on veteran law to attorneys, and promotes attorney participation in veteran law. (*Id.*).

The Court finds that Plaintiffs' allegations, viewed in the light most favorable to Plaintiffs, are sufficient to demonstrate associational standing at this stage of the

litigation. The members of both LOJBW and MVA would otherwise have standing to challenge the Act in their own right, the interests Plaintiffs seek to protect are germane to LOJBW and MVA's respective purposes, and neither the claim asserted nor the relief requested requires the participation of the individual members in this lawsuit. Plaintiffs have alleged that they will suffer irreparable harm without the requested relief because, among other reasons, the Act has rendered Plaintiffs' work either impossible or has imposed an unnecessary burden on Plaintiffs' efforts to secure benefits for veterans. (*Id.* at ¶ 46). Plaintiffs allege that the Act's fee cap would require Plaintiffs to take on fewer veteran cases, and to take on unrelated uncapped cases to offset the fee cap in the Act. (*Id.* at ¶ 47). Relief ordered by the Court would benefit the members of LOJBW and MVA actually injured—both those seeking to aid veterans and the veterans themselves.

Plaintiffs have also likely alleged sufficient facts to support organizational standing because Plaintiffs alleged that they have been forced to divert resources to address the constitutionality of the Act, when they could be furthering the mission of their respective organizations. Specifically, Plaintiff LOJBW is not accepting new clients because of the hours required to litigate this case. (Doc. 43 at 16). Plaintiffs allege that this is not only an economic loss but a restriction on LOJBW's liberty to operate the firm. (*Id.*). Because Plaintiffs need only establish either organizational or associational standing, the Court need not affirmatively find that Plaintiffs have also alleged organizational standing to proceed.

### 3. Plaintiffs Have Alleged Concrete Harm.

Third, the Attorney General contends that Plaintiffs have failed to allege facts showing an "injury-in-fact" that is "concrete and particularized" and "actual or imminent." (Doc. 47 at 3; Doc. 36-1 at 10). The Attorney General contends that Plaintiffs did not point to a "client they lost or a contractual relationship with a client that was in any way affected by" the Act. (Doc. 36-1 at 15). Rather, the Attorney General contends that Plaintiffs allege harm that could "conceivably arise from the prospective application of the Act." (*Id.*). The Attorney General argues that Plaintiffs have not "advanced a single allegation that the Attorney General has acted unlawfully, threatened to act or acted at all, or even that refers to the Attorney General." (*Id.* at 16).

At the outset of this case, the Attorney General filed a Declaration committing not to enforce the Act during the pendency of this lawsuit. (Doc. 19-2). Specifically, the Act provides:

> I hereby attest that I have no ***present intention*** to enforce Act 479 or the Louisiana Unfair Trade Practices Act against the Plaintiffs in the Complaint. Further, ***I do not plan to bring any enforcement actions to enforce the provisions of Act 479 until the above-referenced litigation regarding the validity of Act 479 is resolved.***

(*Id.* at ¶ 11 (emphasis added)). The Attorney General refers to its "present intention," which is subject to change. (*See id.*). The Attorney General further "do[es] not plan" to bring an enforcement action until this case is resolved.

The Court finds the Attorney General's argument to be circular. If the Court dismissed the case because Plaintiffs' alleged harm is not imminent based on the

Attorney General's Declaration committing not to pursue an enforcement action *while this case is pending* under the plain terms of the Declaration, the Attorney General could then immediately pursue an enforcement action on the basis that this litigation is "resolved." For the reasons described above, Plaintiffs have alleged concrete harm.

### 4. The Alleged Harms Are Redressable.

Fourth, the Attorney General contends that redressability is lacking, because an Order of this Court would not cure the alleged flaw in the Act. (Doc. 36-1 at 16). The Court disagrees.

The Court finds this case similar to *Alleman v. Harness*, 780 F. Supp. 3d 608, 627 (M.D. La. 2025), in which plaintiffs—P. Wellness Institute and the Institute's owners—challenged a Louisiana law governing the practice of psychology. P. Wellness Institute offered counseling for adults and specialized in the treatment of trauma-related disorders, mood disorders, and anxiety disorders. *Id.* at 619. P. Wellness Institute was formerly known as Psychological Wellness Institute, LLC, but changed its name because the Louisiana State Board of Examiners of Psychologists informed it that its name violated Louisiana law based on its use of the word "psychological" in the business name. *Id.*

The *Alleman* plaintiffs sued, alleging that the Louisiana law violated its First Amendment rights to the extent it precluded them from using the word "psychological" in the name of their company. *Id.* at 620. The *Alleman* plaintiffs alleged that their First Amendment rights were chilled and affected; they were forced

to change the title of their business, and that they were prevented from describing their services in the manner in which they would like for fear of an enforcement action and prosecution. *Id.* at 628.

Defendants moved to dismiss, arguing that the *Alleman* plaintiffs lacked standing. *Id.* at 626–27. The Court found that the *Alleman* plaintiffs "clearly alleged a sufficiently imminent injury-in-fact, traceable to these [d]efendants, which is redressable through declaratory and injunctive relief. That is, [p]laintiffs have shown 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' and 'a credible threat of prosecution thereunder.'" *Id.* at 627 (citing *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 924–25 (5th Cir. 2023); *see also Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) ("These overlapping policies strongly suggest that enforcement of one produces a credible threat of enforcement of the others. Speech First has clearly shown a credible threat of enforcement of those policies upon its members.")).

The Court relied in part on *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914 (5th Cir. 2023), in which the Circuit found that plaintiffs were "entitled to receive clarification from this court before stifling their constitutional practices or otherwise exposing themselves to punishment or enforcement action. That is a core purpose of a declaratory judgment." *Alleman*, 780 F. Supp. 3d at 629 (citing *Braidwood Mgmt., Inc.*, 70 F.4th at 927–28).

Ultimately, the *Alleman* court found that plaintiffs had standing because they

had shown a credible threat of enforcement. *Alleman*, 780 F. Supp. 3d at 629. The Court further found that the *Alleman* plaintiffs' conduct fell within the scope of the law at issue and that plaintiffs posited constitutional issues with the law. *Id.* at 629–30. The Court emphasized that it must be concerned with "[t]he loss of First Amendment freedoms, for even minimal periods of time . . ." *Id.* at 630.

The Court finds *Alleman* instructive. Here, Plaintiffs have similarly alleged a sufficiently imminent injury-in-fact, traceable to the Attorney General, which is redressable through declaratory and injunctive relief. Plaintiffs have shown an intention to engage in a course of conduct arguably affected by a constitutional interest, but proscribed by the Act, and a credible threat of prosecution thereunder after this case is resolved. Thus, Plaintiffs have standing to pursue their claims against the Attorney General. The Attorney General's Motion to Dismiss (Doc. 36) is **DENIED** in this respect.

### ii. The Governor.

Turning to the Governor's arguments, the Governor first argues that Plaintiffs fail to allege that their purported harm is traceable to the Governor because the statute does not involve any action by the Governor, either in application or enforcement. (Doc. 15-1 at 2). Plaintiffs respond:

> [T]he Governor seems to argue that he is not a party because he took a 'hands-off' approach. But Gubernatorial inaction is an action. Here the Governor has three possible actions[.] He can sign the bill, veto the bill or let it become law without his signature. The third action is as effective as the first. An un-vetoed bill is the same as a signed bill and the Governor cannot escape responsibility for inaction that led to the enactment of Acts 479. It could not have become law without his inaction.

(Doc. 33 at 8).

Second, the Governor argues that redressability is lacking because no effective order could be issued against the Governor that would cure the alleged flaw in the statute. (Doc. 15-1 at 2). Plaintiffs simply respond that their injury is "redressable by a favorable ruling." (Doc. 33 at 5).

Third, and relatedly, the Governor contends that Plaintiffs fail to allege that the Governor has enforcement authority connected to the Act such that the Governor can be sued under the *Ex parte Young* exception to Louisiana's Eleventh Amendment sovereign immunity. (Doc. 15 at 2).

In *City of Austin v. Paxton*, the Fifth Circuit acknowledged that the Article III standing analysis and *Ex parte Young* analysis "significantly overlap." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (citing *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). Thus, the Court will address them together. Generally, to have standing to sue under Article III, a plaintiff must allege: (i) an injury-in-fact that is (ii) fairly traceable to the defendant's challenged action and (iii) redressable by a favorable outcome. *Paxton*, 943 F.3d at 1002 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (noting that an injury-in-fact must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"). A plaintiff "can meet the standing requirements when suit is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, by establishing actual present harm or a *significant possibility of future harm*." *Paxton*,

943 F.3d at 1002 (citing *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008) (emphasis added) (quoting *Bauer v. Texas*, 341 F.3d 352, 357–58 (5th Cir. 2003)).

In fact, it may be the case that an official's "connection to [ ] enforcement" is satisfied when standing has been established. *Paxton*, 943 F.3d at 1002 (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.")). That is, because it's been determined that an official can act, and there's a significant possibility that he or she will act to harm a plaintiff, the official has engaged in enough "compulsion or constraint" to apply the *Young* exception. And even if Article III standing's requirement of a "significant possibility of future harm" and the "connection to [ ] enforcement" requirement under our precedent are not identical, there are certainly notable similarities between the two. At the minimum, Fifth Circuit precedent shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question. *Paxton*, 943 F.3d at 1002–03 (citing *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (addressing standing in an appeal of dismissal based on *Ex parte Young* because "there exists a significant question about it" despite "neither party [ ] rais[ing] the issue," and finding that: (i) standing existed and (ii) the *Young* exception applied to the relevant state officials).

Here, the Court finds that the Governor's "connection to enforcement" is too

attenuated for Plaintiffs to pursue their claims against the Governor under the facts alleged. The Act indicates that "[a] violation of the provisions of this Section shall constitute an unfair, false, misleading, or deceptive act or practice in the conduct of trade or commerce under the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq." La. Rev. Stat. § 29:296(G). Under the Unfair Trade Practices and Consumer Protection Law ("LUTPA"), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are [] declared unlawful." La. Rev. Stat. § 51:1405(A) The Louisiana Attorney General has the power to make rules and regulations interpreting LUTPA. *Id.* § 51:1405(B).

LUTPA provides the Louisiana Attorney General several other powers and duties:

> (1)(a) To investigate, conduct studies and research, to conduct public or private hearings into commercial and trade practices in the distribution, financing and furnishing of goods and services to or for the use of consumers.

> > (b) In the furtherance of the above, the attorney general shall notify said seller, distributor, packer, or manufacturer who shall have the right to put on the record any and all pertinent information that may substantiate the commercial or trade practice and shall have the right of cross examination.

> > (c) Public disclosure shall not be made of any trade secret and commercial or financial information obtained from a person which is of a privileged or confidential nature.

> (2) To suggest means of securing adequate consumer representation on public boards and commissions;

> (3) To advise the governor and the legislature on matters affecting consumer interests, and to assist in developing executive policies, and to develop, draft and prepare legislative programs to protect the consumer;

(4) To promote consumer education;

[. . .]

(6) To do such other acts as are necessary and incidental to the exercise of the powers and functions of the section.

*Id.* § 51:1404(A). LUTPA also gives the Attorney General power to investigate complaints, institute legal proceedings, and take other actions "which are necessary or incidental to the exercise of his powers and functions." *Id.* § 51:1404(B). The Dupree Declaration confirms that "the enforcement mechanism of the Act lies under [Dupree's] responsibilities with the Louisiana Attorney General's Office." (Doc. 19-2 at ¶ 9).

Viewing the facts in the light most favorable to Plaintiffs, the Attorney General bears the enforcement authority for the Act, not the Governor. Plaintiffs' argument that the Louisiana Constitution provides that "[t]he governor shall be the chief executive officer of the state [and] shall faithfully support the constitution and laws of the state and of the United States and shall see that the laws are faithfully executed" does not persuade otherwise in these circumstances. (Doc. 33 at 7 (citing LA. CONST. art. IV, § 5(A)).

In a similar case against former Louisiana Governor Jindal regarding the constitutionality of another Louisiana law, this Court emphasized:

The Court agrees that there is a lack of enforcement connection between Governor Jindal and statute at issue. [. . .] Finding that Governor Jindal has no connection to the enforcement of La. R.S. 46:1419, other than the general duty of La. Const. Art. IV, Section 5(A) to enforce all laws of the State and the United States, and in accordance with the Fifth Circuit's decision in *Okpalobi* [v. Foster, 244 F.3d 405, 434 (5th Cir. 2001)], this

Court determines that the *Young* exception is not applicable to Governor Jindal. Therefore, the immunity afforded by the Eleventh Amendment is applicable, and prevents the Court from exercising jurisdiction over Governor Jindal in the present matter.

*Harmony Ctr., LLC v. Jindal*, No. CIV.A. 10-621-BAJ-CN, 2010 WL 4955167, at *4 (M.D. La. Nov. 30, 2010) (Jackson, J.); *see also Se. La. Bldg. & Const. Trades Council, AFL-CIO v. State of La. ex rel. Jindal Constr. Trades Council ex rel. Jindal*, No. CIV.A. 13-370, 2013 WL 6709750, at *9 (E.D. La. Dec. 18, 2013) ("In sum, the Court finds that [plaintiff] has demonstrated, based on the facts alleged in the Complaint, standing to assert its claims against the Attorney General. The [plaintiff] concedes that the Governor of Louisiana has no role in enforcing Act 134; thus, as in *Okpalobi* [*v. Foster,* 244 F.3d 405, 434 (5th Cir. 2001)], the [plaintiff] lacks standing as to its claim against the Governor."); *Doe v. Jindal*, No. CV 15-1283, 2015 WL 7300506, at *5 (E.D. La. Nov. 18, 2015) ("[T]he Court finds that [plaintiff] has failed to demonstrate that the *Ex parte Young* exception applies to his claims against Governor Jindal. Allegations that a state official has merely carried out his constitutional duties do not satisfy *Ex parte Young*'s requirement that there be 'some connection' between the state official and enforcement of the allegedly unconstitutional act."). The same is true here.

Under these facts, the Governor does not have a sufficient "connection to enforcement" to fall under the *Ex Parte Young* exception, and thus, the Eleventh Amendment bars suit against the Governor. Accordingly, the Governor's Motion is **GRANTED.** Plaintiffs' claims against Defendant Jeff Landry, in his official capacity,

are **DISMISSED WITHOUT PREJUDICE**.[2]

### B. Failure to State a Claim Under Rule 12(b)(6).

Finally, the Attorney General argues that Plaintiffs fail to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 36-1 at 18). The Attorney General contends that Plaintiffs' claims hinge on federal law preempting state law, but the Act merely "fills a gap unregulated by federal laws that govern military veteran benefits." (*Id.* at 18–20).

The Attorney General argues that "[n]o federal provision prohibits unaccredited entities and individuals from assisting veterans with their claims. [The] Act [] regulates the activities of such unaccredited organizations assisting veterans in claims for benefits. [The Act] does not even mention agents or attorneys. The Act does not regulate accredited agents and attorneys[.]" (Doc. 36-1 at 23). The Attorney General further provides that the Act was intended to "regulate those providing services of advising, assisting and consulting concerning veterans['] initial claims. [. . .] Plaintiffs, on the other hand, operate in the accredited agent and attorney space, and are thus subject to the federal law and VA regulations[.]" (*Id.* at 24).

Plaintiffs respond that raising a military and providing benefits for veterans is the responsibility of the Federal Government. (Doc. 43 at 17). Plaintiffs further contend that the Attorney General does not explain how the broad definition of

---

[2] "Ordinarily, when a complaint is dismissed for lack of jurisdiction, [] it should be without prejudice." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024) (citing *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 452 (5th Cir. 2022) (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020)).

"persons" in the Act does not include attorneys and accredited claims agents, because the definition is expansive with no qualifiers or exemptions. (*Id.* at 18). Plaintiffs argue that the facts and law are directly opposed to the Attorney General's position and contend that the Attorney General's "attempt to spin the plain language of the statute is simply without merit and [] border line frivolous." (*Id.*).

The Court agrees. The Court has already considered and rejected the Attorney General's argument, finding that the Act applies to Plaintiffs. Without another argument from the Attorney General, the Attorney General's Rule 12(b)(6) Motion is **DENIED.**

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Jeff Landry's **Motion to Dismiss for Lack of Jurisdiction (Doc. 15)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Liz Murrill's **Motion To Dismiss Pursuant To Rule 12(b)(1) And 12(b)(6) For Lack of Standing and Failure to State a Claim (Doc. 36)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendant

Jeff Landry, in his official capacity, are **DISMISSED WITHOUT PREJUDICE**.


Baton Rouge, Louisiana, this _____ day of September, 2025

_____

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**