UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MILITARY-VETERANS ADVOCACY,               CIVIL ACTION
INC., ET AL.

VERSUS

JEFF LANDRY, *in his official*            NO. 24-00446-BAJ-RLB
*capacity as Governor of the State of*
*Louisiana*, ET AL.

## ORDER

Before the Court is Plaintiffs' **Motion for Summary Judgment (Doc. 61)** and remaining Defendant Liz Murrill's **Cross Motion for Summary Judgment (Doc. 81) (collectively, "the Motions").** Both Motions are opposed. (Docs. 69, 72). The Parties filed replies. (Docs. 73, 75). The Parties also submitted supplemental briefing as ordered by the Court. (Docs. 93, 95). For reasons outlined below, the Plaintiffs' Motion is **GRANTED** and Defendant's Motion is **DENIED.**

## I.     BACKGROUND

On June 3, 2024, the Louisiana State legislature passed Senate Bill 159, the Preserving Lawful Utilization of Services for Veterans (PLUS) Act, ("the Act"). La. Stat. Ann. § 29:296. The Act regulates "person[s] seeking to receive compensation for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter." *Id.* at §29:296 (C)(1). It does so by placing limits on the amount that they may charge veterans for their services and mandates a disclosure that they must provide both orally and in writing to prospective veteran-clients, among other

provisions. *Id.* at §§ 29:296 (C)(1), (E)(2).

Plaintiffs Military-Veterans Advocacy, Inc. ("MVA"), a 501(c)(3) charitable organization, and the Law Office of John B Wells ("LOJBW"), a sole proprietorship, filed suit against Defendants Jeff Landry, in his official capacity as Governor of Louisiana, and Liz Murrill, in her official capacity as Attorney General of Louisiana, to challenge the constitutionality of the Act. (Doc. 1).

Plaintiffs allege that this case is about some of the "most vulnerable and ill patients in Louisiana, disabled veterans of the armed forces, the charitable organization and law office that seeks to help them; and an unconstitutional and ill-conceived law that will hamper or destroy Plaintiffs' efforts in Louisiana leaving some veterans sicker and poorer than their brother and sister veterans in other States." (*Id.* at ¶ 5).

Plaintiff LOJBW is a law practice that consists of a single attorney, John B. Wells. (*Id.* at ¶ 6). Wells is a retired Navy Surface Warfare Commander who practices in military and veteran law. (*Id.*). Wells is admitted to practice in all military courts including the United States Court of Appeals for the Armed Forces and the United States Supreme Court. (*Id.*). Wells is also admitted to practice before the United States Department of Veterans Affairs (the "VA"). (*Id.* at ¶ 7). LOJBW focuses its practice on veteran law and represents veterans in all stages of the veteran system, including pro bono counseling and paid representation before the Board of Veterans Appeals, the Court of Appeals for Veterans Claims, and the Court of Appeals for the Federal Circuit. (*Id.*).

Plaintiff MVA works to litigate, legislate, and educate veterans in their quest for earned benefits. (*Id.* at ¶ 8). MVA attorneys routinely discuss VA issues and provide recommendations to Congress. (*Id.*). MVA also files direct actions against the Secretary under 38 U.S.C. § 502 and is a regular amicus curiae contributor at the Federal Circuit and the Supreme Court of the United States. (*Id.*). In its educational role, MVA provides social media outreach to veterans, conducts continuing legal education on veteran law to attorneys, and promotes attorney participation in veteran law. (*Id.*).

Plaintiffs filed the instant suit to challenge the Act, which Plaintiffs contend will hamper or destroy their efforts in Louisiana to aid disabled veterans of the armed forces. (*Id.* ¶ 5). The Act provides:

A. For the purposes of this Section, the following terms shall have the following meanings:

(1) "Compensation" means any money, thing of value, or economic benefit conferred on, or received by, any person in return for services rendered, or to be rendered, by a person.

(2) "Person" means any natural person, corporation, trust, partnership, incorporated or unincorporated association, or any other legal entity.

(3) "Veterans' benefits matter" means the preparation, presentation, or prosecution of any claim affecting any person who has filed or expressed an intent to file a claim for any benefit, program, service, commodity, function, status, or entitlement to which is determined to pertain to veterans, their dependents, their survivors, or any other individual eligible for such benefits under the laws and regulations administered by the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs.

B. (1) No person shall receive compensation for referring any individual to another person to advise or assist the individual with any veterans' benefits matter.

    (2) No person shall receive any compensation for any services rendered in connection with any claim filed within the one-year presumptive period of active-duty release.

    (3) No person shall receive any compensation for any services rendered in connection with any claim for pension benefits.

C. (1) A person seeking to receive compensation for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter shall, before rendering any services, memorialize the specific terms under which the amount to be paid will be determined in a written agreement signed by both parties. Compensation must be purely contingent upon an increase in benefits awarded, and if successful, compensation shall not exceed five times the amount of the monthly increase in benefits awarded based on the claim. Compensation shall not exceed twelve thousand five hundred dollars or an amount established by federal law, whichever is less. No initial or nonrefundable fee shall be charged by a person advising, assisting, or consulting an individual on a veterans' benefit matter. No interest shall be charged on any payment plans agreed to by the parties.

    (2) A person seeking to receive compensation for advising, assisting, or consulting with any individual with any veterans' benefits matter shall not utilize a medical professional with whom it has an employment or business relationship for a secondary medical exam.

    (3) In the event that a veteran claimant dies prior to a claim being processed, any expected compensation shall be waived, and no charge, fee, or debt shall be collected. Any payment plan for services rendered shall be terminated immediately.

D. No person shall guarantee, either directly or by implication, a successful outcome or that any individual is certain to receive specific veterans' benefits or that any individual is certain to receive a specific level, percentage, or amount of veterans' benefits.

E. (1) No person shall advise, assist, or consult for compensation with any individual concerning any veterans' benefits matter without clearly

providing at the outset of the business relationship the following disclosure both orally and in writing:

> "This business is not sponsored by, or affiliated with, the United States Department of Veterans Affairs or the Louisiana Department of Veterans Affairs, or any other federally chartered veterans' service organization. Other organizations including but not limited to the Louisiana Department of Veterans Affairs, a local veterans' service organization, and other federally chartered veterans' service organizations may be able to provide you with this service free of charge. Products or services offered by this business are not necessarily endorsed by any of these organizations. You may qualify for other veterans' benefits beyond the benefits for which you are receiving services here."

> (2) The written disclosure shall appear in at least twelve-point font and shall appear in a readily noticeable and identifiable place in the person's agreement with the individual seeking services. The disclosure shall direct the individual seeking services to the nearest Veterans Service Office, with the appropriate address and contact information for that office. The individual shall verbally acknowledge understanding of the oral disclosure and sign the document in which the written disclosure appears to represent understanding of these provisions. The person offering services shall retain a copy of the written disclosure while providing veterans' benefits services for compensation to the individual and for at least one year after the date on which the service relations terminate.

F. Businesses engaging in the preparation of an initial claim or appeal of a disability rating for a fee shall not do any of the following:

> (1) Utilize international call center or data centers for processing veterans' personal information.

> (2) Gain direct access to any personal medical, financial, or government benefits login, username, or password information.

G. A violation of the provisions of this Section shall constitute an unfair, false, misleading, or deceptive act or practice in the conduct of trade or commerce under the Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401 et seq.

H. An entity assisting veterans with their initial disability claims as prescribed within this Section shall, within one hundred twenty days of the request, provide on an annualized basis of all of the following data to the Department of Veterans Affairs:

    (1) Aggregate number of serviced in the state.

    (2) Number of claims approved, denied, and pending.

    (3) Average claim return time.

    (4) Number of clients who received a successful increase who have a previously assigned "agent of record".

    (5) Data provided shall exclude any items of personal financial, medical, or other data deemed confidential, business privileged, or HIPAA protected information.

La. Rev. Stat. § 29:296.

Plaintiffs allege that the Act conflicts with federal law and thus violates the Supremacy Clause. (Doc. 1 at ¶¶ 42–43). Plaintiffs further allege that the Act violates the First Amendment by "coercing [Plaintiffs] to deliver the State's message, via mandated disclosure language, and pr[o]scribing heavy penalties for failure to do so." (*Id.* at ¶ 55). Plaintiffs allege that these coerced messages are intended to discourage veterans from securing the services of an attorney. (*Id.* at ¶ 56). Plaintiffs allege that, in effect, the Act attempts to convince veterans that using a less qualified and possibly unaccredited organization would be desirable, even if this reduces the chance of obtaining benefits. (*Id.*).

Plaintiffs also allege that the Act infringes on the Contracts clause because it caps fees below what the contracting parties envision. (Doc. 1 at ¶¶ 62–68). Plaintiffs contend that the Act will result in contract modifications or novation that will

fundamentally change the extent of the services Plaintiffs can offer, limiting Plaintiffs' ability to assist veterans. (*Id*.). Finally, Plaintiffs allege that the Act violates the Louisiana Constitution because it infringes on the Louisiana Supreme Court's ability to regulate attorneys and set applicable fee caps. (*Id*. at ¶¶ 70–78).

## II.    PROCEDURAL HISTORY

Plaintiffs filed suit against the Governor and the Attorney General, asserting the following causes of action: (1) federal preemption under the Supremacy Clause of the United States Constitution (Count I); (2) abridgement of the Rights of Association, Speech, and Petition in Violation of the First and Fourteenth Amendments to the United States Constitution (Count II); and (3) unconstitutional infringement of the Contracts Clause (Count III). (Doc. 1).

The same day that Plaintiffs filed suit, Plaintiffs filed a Motion for Temporary Restraining Order ("TRO"), asking the Court to enjoin enforcement of the Act while the Court considered its constitutionality. (Doc. 2). The Court set the matter for hearing. (Doc. 5).

In response, the Attorney General filed the Declaration of Michael Dupree, Director of the Public Protection Division of the Attorney General's Office. (Doc. 19-2). The Declaration attests that the enforcement mechanism of the Act lies under his responsibilities at the Attorney General's Office, because the primary enforcement mechanism of the Act is the Louisiana Unfair Trade Practices Act, which Dupree enforces. (*Id*.  at ¶¶ 6–9). Dupree further attested:

> I hereby attest that I have no present intention to enforce Act 479 or the
> Louisiana Unfair Trade Practices Act against the Plaintiffs in the

Complaint. Further, I do not plan to bring any enforcement actions to enforce the provisions of Act 479 until the above-referenced litigation regarding the validity of Act 479 is resolved. In the event that my office determines to bring such any action against Plaintiffs, I will so advise, in advance, counsel representing the Attorney General in the case identified herein so that they can inform the Court as may be necessary or appropriate.

(*Id.* at ¶ 11).

Based on the Attorney General's commitment not to enforce the Act during the pendency of this lawsuit, the Parties filed a Joint Motion to Continue the TRO. (Doc. 19). The Court granted the Motion and continued the hearing on Plaintiffs' Motion for TRO without date. (Doc. 28).

Thereafter, Defendants asked the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 15; Doc. 36). The Court dismissed Plaintiffs' claims as to Defendant Jeff Landry, in his official capacity as Governor of Louisiana, due to a lack of subject matter jurisdiction. (Doc. 76 at 28-29). However, the Court denied the Attorney General's Motion and found that Plaintiffs had standing to bring their claims against her, in part, because "by its plain meaning, the Act applies to Plaintiffs." (*Id.* at 14). Plaintiffs and remaining Defendant Liz Murrill, in her official capacity as Attorney General of Louisiana, now both move for summary judgment, asserting that there are no genuine issues of material fact and asking the Court to rule in their respective favors as a matter of law. (Docs. 61 and 81).

8

### III.   LEGAL STANDARDS

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no

genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## IV.    DISCUSSION

### A. Whether the Act Violates the First Amendment Right to Free Expression

At the outset, it is not clear from the pleadings whether Plaintiffs are lodging an as-applied or facial challenge to the constitutionality of the Act under the First Amendment. Plaintiffs allege that the Act "abridges Plaintiffs' freedom of speech by coercing them to deliver the State's message, via mandated disclosure language. . .", which appears to challenge the statute's application to Plaintiffs specifically. (Doc. 1 at ¶ 55).[1] However, as-applied challenges typically "require[] the development of a factual record for the court to consider." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009). The scant factual record here, in addition to the broad relief requested, lends toward interpreting Plaintiffs' challenge as a facial one as well. (*Id.* at 18) ("Plaintiffs request that this Court . . . declare SB 159 unconstitutional and void . . . [and] enjoin [Defendant] from any and all enforcement of SB 159, as passed and codified").

"In the commercial speech context, [t]o succeed in a typical facial attack,

---

[1] The Court notes that Plaintiffs also seemingly allege a facial challenge to the constitutionality of the Act based on vagueness and overbreadth, as well as a violation of their right to free association under the First Amendment. (Doc. 1 at ¶¶ 57, 58, 60). However, Plaintiffs failed to sufficiently brief these issues in both their instant Motion for Summary Judgment (Doc. 61) and Supplemental Briefing (Doc. 95). Thus, the Court will not consider these claims.

[Plaintiffs] would have to establish that no set of circumstances exists under which [the Act] would be valid, or that the statute lacks any plainly legitimate sweep ....” *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 219 (5th Cir. 2023) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations and internal quotation marks omitted). Further, in a facial challenge, Plaintiffs bear this “heavy burden.” *Id.* It is also well established that facial challenges are strongly disfavored, and that courts should exercise the canon of constitutional avoidance and employ principles of judicial restraint before finding a state law unconstitutional. *Id.* (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008); *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018)). With this in mind, and in part because Plaintiffs have made no allegations “to establish that *no* set of circumstances exists under which [the Act] would be valid” with respect tto the First Amendment, the Court construes Plaintiffs’ First Amendment challenge as applied only to them, rather than as a facial challenge. *Turtle Island Foods,* 65 F.4th at 219.

### 1. Legal Standard

While the Constitution protects commercial speech, that protection is more limited than for most other forms of speech. *Express Oil Change, L.L.C. v. Miss. Bd. Of Licensure for Pro. Eng’rs & Surveyors*, 916 F.3d 483, 487 (5th Cir. 2019) (citing *Ohralik v. Ohio State Bar Ass’n*, 436 U.S. 447, 456 (1978)). Further, “the constitutionality of [a] required warning[] turns on both (1) whether the speech is

commercial and the (2) applicable level of scrutiny." *Free Speech Coal., Inc. v. Paxton,* 95 F.4th 263, 279 (5th Cir. 2024), *aff'd*, 606 U.S. 461 (2025).

The Parties appear to agree that the disclaimer mandated by the Act constitutes compelled commercial speech. (Doc. 93 at 4-5; Doc. 95 at 4). The Court, relying on the Fifth Circuit's analysis in *Free Speech Coal.*, agrees. 95 F.4th at 280 (finding that government-required warnings outside of an advertisement context may still constitute commercial speech). Regarding the applicable level of scrutiny, Defendants contend that because this case relates to a mandatory disclosure, the less stringent *Zauderer* test should be used to analyze its constitutionality. (Doc. 93 at 7). *See Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,* 471 U.S. 626 (1985) (finding that states may require commercial enterprises to disclose "purely factual and uncontroversial information about their services" so long as disclosures are reasonably related to a legitimate state interest and not unjustly or unduly burdensome). Defendants maintain, however, that the disclosure passes muster under the more stringent *Central Hudson* test as well, which is an intermediate-scrutiny analysis. (Doc. 93 at 7). *See Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557 (1980) (implementing four-factor test for commercial speech limitations). Plaintiffs agree that one of these two tests applies, but do not appear to advance either. (Doc. 95 at 5).

In deciding which standard applies to compelled disclosures, courts apply the "relaxed" *Zauderer* scrutiny "where a state compels 'commercial enterprises to disclose purely factual and uncontroversial information about their services . . . .'. "

*Free Speech Coal.* 95 F.4th at 281 (quoting *Chamber of Comm. of U.S. v. U.S. Sec. & Exch. Comm'n,* 85 F.4th 760, 768 (5th Cir. 2023)). "A compelled statement is 'uncontroversial' for the purposes of *Zauderer* where the truth of the statement is not subject to good-faith scientific or evidentiary dispute and where the statement is not an integral part of a live, contentious political or moral debate." *Id.* at 281-82. "That standard does not mean that whenever the compelled speaker dislikes or disagrees with the message he must convey, the statement is controversial . . . It means only that there must be some widespread, good-faith dispute over the topic of the facts." *Id.*

Here, neither Party advances a factual record that assists the Court in deciding whether the compelled language is controversial. In their pleadings, Plaintiffs allege only that their objection to the disclosure language "as a leading veterans litigation group . . . is enough to make the speech controversial." (Doc. 95 at 5). The Court does not entirely agree with that contention. However, the burden to rebut a plaintiffs' challenge of controversy in the *Zauderer* context lies with Defendant here. *See Free Speech Coal.*, 95 F.4th at 282 ("We need not determine the outer limits of what establishes "controversy" because [the state] has failed to rebut plaintiff's challenges in such a way that we are comfortably within its boundaries"). Defendant similarly has offered next to no evidence regarding the lack of controversy of the disclosure language, save for their own assurance it is not. (Doc. 81-1 at 28). In a vacuum of factual support on this point, the Court cannot weigh in on whether the disclosure language is controversial or not controversial.

There is, however, also serious doubt raised by Plaintiffs as to whether the disclosure language is "purely factual" such that the Court can apply the relaxed *Zauderer* standard, particularly when it is required by VA-authorized attorneys and agents like Plaintiffs. Specifically, the Act's mandatory disclosure would require Plaintiffs, and other such authorized agents and attorneys, to tell prospective clients that "[o]ther organizations including but not limited to . . . a local veterans' service organization, and other federally chartered veterans' service organizations may be able to provide you with this service free of charge." La. Stat. Ann. § 29:296 (E)(1). "In the context of litigation within the veterans court system," Plaintiffs argue, this is "patently false." (Doc. 61-3 at 28). Plaintiffs point to case law that has "challenged the ability of mere unlicensed laypersons, otherwise known as state or county veterans service officers, to properly prosecute claims and appeals of veterans benefits decisions." (Doc. 61-3 at 30). *See Fears v. Wilkie,* 31 Vet. App. 309 (2019); *Comer v.* Peake, 552 F.3d 1362 (Fed. Cir. 2009); *Cook v. Marshall,* 68 F.3d 447 (Fed. Cir. 1995). Plaintiffs go on to note that "[f]ew if any organizations referenced in the required disclaimer provide assistance within the litigation community [as Plaintiffs do]," further undercutting the factual validity of the disclosure as applied to Plaintiffs. Defendant does not attempt to rebut these contentions except by reiterating conclusory statements. (Doc. 93 at 11). For the above reasons, the Court does not find that the *Zauderer* standard can clearly be applied here.

"It is unsettled precisely which standard of scrutiny applies to compelled commercial speech that is not subject to *Zauderer* scrutiny. On the one hand, *Central*

*Hudson* applied a form of intermediate scrutiny. On the other hand, *Central Hudson* dealt only with restrictions on commercial speech, not *compelled* speech. Yet, *NIFLA* suggests that compelled speech must survive, at minimum, intermediate scrutiny." *Free Speech Coal.*, 95 F.4th at 283 (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557 (1980); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 585 U.S. 755, 773 (2018)). The Fifth Circuit ultimately applied the *Central Hudson* test in *Free Speech Coal.,* and this Court will do the same. *Id.*

    **2. Analysis**

    The test for when a government actor may regulate commercial speech set forth in *Central Hudson* asks: "(1) whether the commercial speech at issue concerns unlawful activity or is misleading; (2) whether the governmental interest is substantial; (3) whether the challenged regulation directly advances the government's asserted interest; and (4) whether the regulation is no more extensive than necessary to further the government's interest." *Central Hudson,* 447 U.S. at 566. "Each of these latter three inquiries"—whether (1) 'the asserted governmental interest is substantial,' (2) the regulation 'directly advances' that interest, and (3) the regulation 'is not more extensive than is necessary to serve that interest'—must be answered in the affirmative for the regulation to be found constitutional." *Express Oil Change, L.L.C.*, 916 F.3d at 492 (citing *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002)). "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Express Oil Change, L.L.C*, 916 F.3d at 487 (citing

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983)). This "burden is a 'heavy' one," and may not be "satisfied 'by mere speculation or conjecture[.]'" *Id.*

The Court finds that Defendant has not carried her burden to meet at least two, or perhaps three, of the four prongs of the *Central Hudson* test – to show that the government's interest is substantial, that the Act directly advances the government's asserted interest, or that the regulation is not more extensive than is necessary to serve that interest. 447 U.S. at 566. Defendant offers only conclusory allegations to support the Act's compelled disclosure, asserting it "is clearly motivated by the Legislature's desire to regulate the provision of advising, assisting, or consulting individuals concerning veterans' benefits matters for compensation. . . The disclosures are clearly aimed at informing the potential client, nothing more." (Doc. 81-1 at 27). Defendant further avers that

> there is little question (1) that the State's interest in preventing deception in connection to veteran's benefits is substantial; (2) the disclosure advances the State's interest in a direct and material way by preventing fraud, overreaching, and misleading veterans into believing that they have no other option and the service provider has an "inside track" in obtaining benefits; (3) the disclaimer serves as a reasonable means to prevent the dangers to veterans applying for benefits and are narrowly tailored to achieve the State's objective.

(Doc. 69 at 20). Despite having ample opportunity to do so, Defendant provides no support in the factual record for these conclusions. There are no legislative findings in the statutory text. *See* La. Stat. Ann. § 29:296. No legislative hearings were identified or transcripts provided to support that the type of fraud alleged is a widespread issue, that the Act is an efficient means to prevent fraud on veterans, or

that other means that may be less restrictive on free speech were not possible.[2] Defendant argues in her opposition brief and instant Motion that the Act, and thus the disclosure language, does not apply to Plaintiffs. (Doc. 69, 81). The Court found that the Act does apply to Plaintiffs, though, and gave the Parties an opportunity to supplement their arguments in light of that ruling. (Doc. 76, 86). However, despite outlining the steps of the *Central Hudson* test in her supplemental briefing, Defendant puzzlingly does not offer any of the required support to satisfy the test, nor address how her argument changes in light of the court's ruling that the Act does in fact apply to Plaintiffs. (Doc. 93). Defendant reiterates only that "[t]he Government has a substantial interest in protecting veterans and applicants for veterans benefits." (*Id.* at 9). Perhaps the Court can accept that this is a sufficiently substantial interest for the government. However, Defendant offers no evidence to support the effectiveness of the disclosure in achieving this interest, nor a finding that the disclosure is not more extensive than is necessary to achieve this interest with regard to the First Amendment. To the contrary, Plaintiffs, who comprise a veterans advocacy nonprofit and an attorney who takes up benefits claims on behalf of veterans, sometimes *pro bono*, argue that this mandatory disclosure would discourage potential veteran-clients from engaging them for their services. (Doc. 1 at ¶¶ 5-8, 56).

---

[2] Defendant submitted minutes from a Senate Committee meeting (Doc. 81-6) and copies of the House and Senate Journals (Doc. 81-8, 81-9) that appear to merely report the passage of the bill and provide no substantive remarks on the PLUS Act.

Importantly, the burden is on the government to support this restriction on speech, and it cannot rest on 'speculation or conjecture.' *Edenfield v. Fane,* 507 U.S. 761, 770, (1993); *see Ibanez v. Fla. Dep't of Bus. & Prof. Reg.,* 512 U.S. 136, 146 (1994). Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Here, both Parties were provided ample opportunity to point to facts that could develop this issue. Discovery has concluded and both Parties offered statements of material facts. (Docs. 61-2, 81-2). Thus, the Court is left to conclude that there are no further facts that could be developed even at trial that would lend support to Defendant's arguments. Without at least some evidence to support the reasonableness of the Act's required disclosure, the Court finds that the Act violates Plaintiffs' rights under the First Amendment and is therefore unconstitutional as applied to Plaintiffs.

## B. Whether the Act is Preempted by Federal Law

Article VI of the United States Constitution provides that "the laws of the United States ... shall be the supreme law of the land." U.S. Const. art. VI, cl. 2. In preemption cases, courts must begin with the presumption that "the historic police

powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009). However, this applies most stringently when "Congress has legislated in a field which the States have traditionally occupied." *Id.* It does not apply "when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke,* 529 U.S. 89, 109 (2000). The Parties first disagree whether a presumption against preemption applies. Defendant argues that "enforcement of compensation for services related to military veterans benefits" is such a "field" which has been traditionally governed by the states. (Doc. 69 at 14). Plaintiffs counter that veterans' benefits are "a uniquely federal program." (Doc. 61-3 at 24). The Court has no difficulty finding that federal benefits for veterans, and regulating access to those, is clearly "an area where there has been a history of significant federal presence." *Locke*, 529 U.S. at 109. Thus, the presumption against preemption does not apply here.

Next, "Article VI's Supremacy Clause may entail preemption of state law in any of three ways: by express provision, by implication, or by a conflict between state and federal law." *Louisiana Health Service & Indem. Co. v. Rapides Healthcare System*, 461 F.3d 529, 533 (5th Cir.2006) (citing Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203–04 (1983)). Accordingly, "[t]here are three types of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption." *Simmons v. Sabine River Authority Louisiana,* 732 F.3d 469, 473 (5th Cir.2013) (citing *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630-

31 (2012)). In their complaint, Plaintiffs argue that only field preemption and conflict preemption apply to the Act. (Doc. 61-3 at 23-29). The Court will address each in turn.

### 1. Conflict preemption

Conflict preemption exists when it is either (1) impossible to comply with both state and federal law or (2) when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

Plaintiffs contend that the Act is conflict preempted, arguing that the Act's fee cap and other compensation limitations "conflict with the statutory scheme enacted by Congress" at 38 U.S.C. § 5904(d) and 38 C.F.R. § 14.636(f). (Doc. 61-3 at 27). Defendant disagrees, claiming that the Act merely "addresses a gap in federal law concerning the provision of services to veterans", and that no federal text "prohibits states from imposing additional consumer protections." (Doc. 69 at 15; Doc. 81-1 at 22). Defendant further avers that "[Plaintiffs] identify no instance in which compliance with both state and federal law is impossible." (Doc. 81-1 at 22). On this last point at least, the Court must agree. 38 U.S.C. § 5904(a) authorizes agents and attorneys "for the preparation, presentation, and prosecution of claims under laws administered by the Secretary [of Veterans Affairs]," as well as sets standards of conduct and limits on the amount of fees they may charge. The Act implements a strict $12,500 cap on compensation "for advising, assisting, or consulting with any individual in connection with any veterans' benefits matter." La. Stat. Ann. § 29:296 (C)(1). Plaintiffs have not shown that it would be literally impossible to comply with

both 38 U.S.C. § 5904 and the Act's limits on compensation, despite certainly serious frustrations.

However, as noted, courts have also found preemption "where 'under the circumstances of [a] particular case, [a state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects...." *Id.* That is not a license to engage in a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives," though, because "such an endeavor would undercut the principle that it is Congress rather than the courts that preempts state law." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 180 (5th Cir. 2018) (citing *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011)).

Here, Plaintiffs claim that the Act, by limiting the fees they may charge for their services, "will limit Plaintiffs' ability to represent veterans, especially in complicated cases" and that they "will be forced to decline [many complex cases]" and take up other less complex cases "to make up financial shortfalls." (Doc. 61-3 at 15). They further argue that the Act "interferes with the primary mission of [MVA]" and "limits the type and number of cases accepted by [Mr. Wells]." (*Id.*). Plaintiffs also contend that the Act's prohibition on receiving compensation for "any services rendered in connection with any claim for pension benefits," would severely limit

their work on behalf of veterans appealing denials of pension benefits. La. Stat. Ann. § 29:296 (B)(1). (Doc. 61-3 at 27). Defendants contend that these requirements do not apply to Plaintiff and other VA-authorized agents, but the Court has already dismissed this idea. (Doc. 76). The Act's requirements do, by plain language standards, apply to Plaintiffs. (*Id.*).

The Court thus finds that the Act, by placing significant restrictions on the services offered by Plaintiffs and others similarly situated, sufficiently obstructs "Congress's intent that veterans have access to authorized, qualified private representatives to assist them in pursuing claims for VA benefits." *Jewell v. Herke*, 526 F. Supp. 3d 459, 465 (D. Minn. 2021).[3] The Act is preempted by its conflict with federal law.

### 2. **Field preemption**

"[S]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States,* 567 U.S. 387, 389 (2012) (citing *Gade v. National Solid Wastes Management Assn.,* 505 U.S. 88, 115 (1992)). "The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (quoting *Rice v. Santa*

---

[3] While the cited case is only of persuasive authority and was heard on a different procedural posture, the Court nonetheless finds its analysis regarding federal preemption of the regulation of veterans' benefits claims agents informative and applicable.

*Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). "Courts should hesitate to infer field preemption unless 'the nature of the regulated subject matter permits no other conclusion' or 'Congress has unmistakably so ordained.' When analyzing field preemption, 'the relevant field should be defined narrowly.'" *U.S. v. Texas,* 144 F.4th 632, 667 (5th Cir. 2025) (quoting *DeCanas v. Bica,* 424 U.S. 351, 356 (1976); *City of El Cenizo v. Texas,* 890 F.3d 164, 177 (5th Cir. 2018)).

In light of these cautious directives, the Court refrains from finding that the field of regulating federal veterans' benefits claims agent is preempted to such an extent that an "intent to displace state law altogether can be inferred." *Arizona v. United States*, 567 U.S. at 389. However, it does appear that the federal government has at least a dominant interest and a robust framework to regulate agents and attorneys who may assist veterans in accessing benefits "under the laws and regulations administered by the United States Department of Veterans Affairs." La. Stat. Ann. § 29:296 (A)(3). *See* 38 U.S.C. § 5904(a)(1) (enacting a scheme to recognize attorneys and agents "for the preparation, presentation, and prosecution of claims under laws administered by the Secretary [for Veterans' Affairs]."). The Court also finds instructive the Supreme Court's ruling in *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379 (1963), that "[a] State may not enforce licensing requirements which, though valid in the absence of a federal regulation, . . . impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress." *Id.* at 385.

**C. Whether the Act Violates the Contracts Clause**

Because the Court has found the Act unconstitutional on the basis of federal preemption and the First Amendment, it need not reach Plaintiffs' remaining constitutional claim regarding the Contracts Clause. U.S. Const. art. I, §10, cl. 1. However, the Court finds Defendant's argument persuasive on this point. (Doc. 81-1 at 22-23). Nothing in the text of the Act states or implies that the fee caps, or any other provisions, will apply to existing contractual obligations. *See* La. Stat. Ann. § 29:296; *Ogden v. Saunders*, 25 U.S. 213, 269 (1827).

## V.    CONCLUSION

The Court finds that the Act, as written, necessarily impedes the realization of Congress's goal of ensuring that veterans have access to qualified representatives to assist them in pursuing claims for VA benefits, in violation of the Supremacy Clause. U.S. Const. art. VI, cl. 2.  The Court also finds that the Act's mandatory disclosure provision, La. Stat. Ann. § 29:296 (E)(1), is unconstitutional as applied to Plaintiffs because it compels speech in a manner that violates Plaintiffs' right to free expression under the First Amendment. Therefore, consistent with the reasoning in this opinion, the Court grants summary judgment for the Plaintiffs.

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Summary Judgment (Doc. 61)** is **GRANTED.**

24

**IT IS FURTHER ORDERED** that Defendant's **Cross Motion for Summary Judgment (Doc. 81)** is **DENIED**.

**IT IS FURTHER ORDERED** that the Preserving Lawful Utilization of Services for Veterans (PLUS) Act, ("the Act"), now codified as La. Stat. Ann. § 29:296, is unconstitutional and Defendants are enjoined from enforcing the Act as written.

Baton Rouge, Louisiana, this 6th day of February, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**